UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHUCK PILLON,

                Plaintiff,

   v.

SCOTT MARLOW, et al.,

                Defendants.

CASE NO. 2:19-cv-00710 -BAT

**ORDER GRANTING MOTION TO DISMISS OF DEFENDANTS SCOTT MARLOW AND STATE OF WASHINGTON**

Defendants Scott Marlow ("Marlow") and State of Washington ("State") move pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Plaintiff Chuck Pillon's ("Pillon") amended complaint. Dkt. 10. Defendant Julia Garratt also filed a motion to dismiss (Dkt. 13), which is addressed by separate order.

Defendants Marlow and State argue dismissal is warranted because the State has sovereign immunity; Marlow has prosecutorial immunity; the *Younger* and *Rooker-Feldman* abstention doctrines dictate this Court should not hear this case; and, Pillon has failed to state a claim. Dkt. 10. In a response entitled "Interim Pleading," Pillon argues he is entitled to summary judgment because the uncontested facts show "grievous errors on the part of the two State agents here…Judge Julia Garratt and AAG Scott Marlow." Dkt. 15 at 5.

REPORT AND RECOMMENDATION- 1

The Court finds that the motion to dismiss should be granted because Marlow and State are immune from liability and that abstention by this court is appropriate because federal adjudication of Pillon's claims would interfere with a pending state court criminal matter.

## FACTUAL ALLEGATIONS

The State of Washington charged and convicted Pillon with unlawful dumping of solid waste without a permit under RCW 70.95.240. Dkt. 7 (Affidavit of Exhibits to Amended Complaint), Ex. 2, *State v. Pillon*, King County Superior Court Case No. 16-1-05983-6 KNT). Pursuant to RCW 70.95.240(3)(c)(i), it is a gross misdemeanor for a person to litter a cubic yard or more. If that occurs, the person shall pay a "litter cleanup restitution payment," which "must be the greater of twice the actual cost of removing and properly disposing of the litter, or one hundred dollars per cubic foot of litter." RCW 70.95.240(3)(c)(ii).

Pillon was also charged and convicted in the same case of violating the Hazardous Waste Management Act (RCW 70.105.085(1)(b) & .010) and wrecking vehicles without a license with a prior conviction (RCW 46.80.020). Dkt. 10, Exhibits 1-3, *State v. Pillon*, King County Superior Court Case No. 16-1-05983-6 KNT) (Ex. 1—first amended information), (Ex. 2 – findings of fact and conclusions of law), and (Ex. 3 – docket sheet showing conviction)).[1]

King County Superior Court Judge Julia Garratt presided over the trial and Assistant Attorney General Scott Marlow prosecuted the matter. Dkt. 6 at 3. After Pillon's conviction, the

---

[1] The Court takes judicial notice of the filings in *State v. Pillon* (King County Superior Court Case No. 16-1-05983-6 KNT) and the documents attached to Pillon's "Affidavit of Exhibits re Amended Complaint" (Dkt. 7). *See e.g., Kimbro v. Miranda*, 735 F. App'x 275, 278 n.2 (9th Cir. 2018) (internal quotations and citations omitted) ("A court may consider exhibits attached to a complaint, . . . as well as document[s] the authenticity of which [are] not contested, and upon which the plaintiff's complaint necessarily relies[,] even if they are not attached to the complaint.")

REPORT AND RECOMMENDATION- 2

Superior Court had to determine the amount of payment, according to RCW 70.95.240(3)(c)(ii). Given the scale of the litter on Pillon's property, the State calculated that the volume of cubic waste on the property was 558,419.88 cubic feet. Dkt. 7, Ex. 5 at 3.

Rather than multiply that by $100 under RCW 70.95.240(3)(c)(ii) to arrive at a $55,841,988 penalty, the State proposed that the Superior Court follow a stipulation between the parties that Pillon brought 120 cubic yards of solid waste onto the property during the 12-month charging period. *Id*. The State contended that the $55 million was inappropriate. *Id*. That lead to a calculation under RCW 70.95.240(3)(c)(ii) of an award of $3,888,000. *Id*. The Superior Court agreed and entered an order setting litter cleanup restitution in the amount of $3,888,000. Dkt. 7, Ex. 2.

Pillon appealed to the Washington Court of Appeals, Division I. The parties' briefs have been filed and the matter is presently awaiting decision. Dkt. 10, Ex. 4. In his appellate brief, Pillon relies on the same factual allegations relating to the Superior Court's actions throughout the trial to support an alleged violation of his federal rights. Dkt. 7, Ex. 12.

Pillon also brought an action in King County Superior Court regarding the water quality near his property, which action led to a stipulation that Washington's Department of Ecology did not need further water samples. Dkt. 7, Ex. 3. However, there is no apparent connection between that stipulation and the solid waste on Pillon's property.

And finally, Pillon filed the lawsuit in this case, alleging violations under 42 U.S.C. § 1983 against the State of Washington, "in the persons of" AAG Marlow and Judge Garratt. Dkt. 6 at 1. Pillon alleges that AAG Marlow and Judge Garratt acted illegally throughout the course of the trial, that the water quality in a nearby river on the property shows that there is no need for

REPORT AND RECOMMENDATION- 3

further remediation, and Pillon was convinced not to allow individuals to stay on his property. Dkt. 6.

Pillon asks the Court to vacate the litter cleanup restitution order, to order that all funds be returned to Pillon, and to award "punitive penalties" for "the emotional and practical harm Plaintiff has suffered." *Id.* at 21.

## LEGAL STANDARD

This Court should dismiss the amended complaint if the Court lacks jurisdiction over the subject matter of the dispute, or if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). In considering either basis for dismissal, the Court must accept as true all material factual allegations in the complaint. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). In deciding whether a complaint states a claim, the Court must additionally draw all reasonable inferences in favor of the plaintiff. *Id.* at 1300. The Court is not, however, required to accept as true a plaintiff's legal or conclusory allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the question involves jurisdiction of the federal court, the plaintiff must affirmatively establish jurisdiction, and that showing is not made by drawing inferences from the pleadings. *Norton v. Larney*, 266 U.S. 511, 515 (1925); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

## DISCUSSION

A.  State of Washington – The Eleventh Amendment

The Eleventh Amendment bars lawsuits against the State of Washington in federal court. Absent an express waiver or a valid abrogation by Congress, a state's sovereign immunity bars a lawsuit against the state in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54

REPORT AND RECOMMENDATION- 4

(1996). The State of Washington has not waived its Eleventh Amendment immunity. *Whiteside v. State of Wash.*, 534 F. Supp. 774, 778 (E.D. Wash. 1982); RCW 4.92.010. Washington's sovereign immunity extends to its superior courts as they are arms of the State. *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (suit against a California superior court is a suit against the State, which is barred by Eleventh Amendment immunity*), superseded by statute on other grounds*; *Hyland v. Wonder*, 117 F.3d 405, 513, *opinion amended on denial of reh'g*, 127 F.3d 1135 (9th Cir. 1997) (superior court judges are State agents or employees).

Accordingly, the Eleventh Amendment bars Pillon's suit against the State of Washington and the King County Superior Court.

B. <u>AAG Marlow – Prosecutorial Immunity</u>

Pillon alleges AAG Marlow made statements throughout the course of the trial and post-trial motions that are incorrect or illegal. Dkt. 6 at 7-10. Pillon makes no allegations regarding AAG Marlow where he is not acting in his capacity as a prosecutor trying the case.

Prosecutors "are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)) (citations omitted). These considerations "arise out of the general common-law 'concern that harassment by unfounded litigation' could both 'cause a deflection of the prosecutor's energies from his public duties' and also lead the prosecutor to 'shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler*, 424 U.S. at 423). Absolute immunity may not apply when a prosecutor is not

REPORT AND RECOMMENDATION- 5

acting as an officer of the court but is engaged in other tasks, like investigative or administrative tasks. *Id*. at 342. Courts look to the "functional" considerations to determine if the conduct at issue is "intimately associated with the judicial phase of the criminal process." *Id*. Absolute immunity can be a bar even in contexts where there is a civil penalty, like civil forfeiture proceedings. *Torres v. Goddard*, 793 F.3d 1046, 1052 (9th Cir. 2015).

Reviewing Pillon's claims against AAG Marlow in the light most favorable to him, the Court concludes that the claims relate solely to AAG Marlow's acts as a prosecutor preparing and presenting his case to the King County Superior Court (*i.e.* Marlow suppressed exculpatory evidence; made speculative arguments; refused to perform soil testing; concocted fictional evidence at the restitution hearing; and created a deceptive civil penalty formula) (*see* Dkt. 6 at 6-9). Accordingly, AAG Marlow is entitled to absolute immunity and dismissal of the claims against him.

C. *Younger* Abstention Doctrine

Defendants also contend that the amended complaint should be dismissed under the *Younger* abstention doctrine. The *Younger* abstention doctrine is based on principles of equity and comity. *Younger v. Harris*, 401 U.S. 37, 43-46 (1971). The equitable principle at play is that courts should refrain from exercising their equitable powers when a movant has an adequate remedy at law. Notions of comity require the federal government to let states be "free to perform their separate functions in their separate ways." *Id.* at 44. The Ninth Circuit applies a four-part test to determine application of *Younger* abstention:

> We must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or

REPORT AND RECOMMENDATION- 6

      have the practical effect of doing so, *i.e.*, would interfere with the state proceeding in a way that *Younger* disapproves.

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008). Under these factors, *Younger* abstention applies.

      First, Pillon's state court criminal matter is currently on appeal. *See* Dkt. 10 Ex. 4. Second, the state court proceeding arises out of a prosecution that implicates important state interests as the State of Washington has a strong interest in enforcing its criminal laws. Third, Pillon has a full opportunity to raise his complaints in his case on appeal. Finally, federal adjudication of Pillon's claims would interfere with the pending state court criminal matter. In both actions, Pillon relies on the same factual allegations to support alleged violation of his federal rights.

      Accordingly, the interests of equity and comity dictate this Court should abstain from adjudication of Pillon's claim because all four *Younger* abstention factors are satisfied.

D.      The *Rooker-Feldman* Doctrine

      To the extent Washington state courts have rendered final judgments in any of Pillon's ongoing state court claims, the *Rooker-Feldman* doctrine precludes this Court from exercising appellate jurisdiction over them. Under 28 U.S.C. § 1257, only the United States Supreme Court has jurisdiction over appeals from final state court judgments. "Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983). When issues presented in a federal suit are "inextricably intertwined" with the issues in a de facto appeal from a state court decision,

REPORT AND RECOMMENDATION- 7

*Rooker-Feldman* dictates that those intertwined issues "may not be litigated." *Kougasian v. TMSL, Inc.* 359 F.3d 1136, 1142 (9th Cir. 2004).

Here, Pillon references King County Superior Court Case 18-2-24755-1-KNT in his amended complaint. Dkt. 6 at 5. The superior court entered an order dismissing the complaint with prejudice on April 29, 2019, pursuant to a stipulation. Dkt. 10, Ex. 5. It does not appear that Pillon appealed that decision. Thus, to the extent Pillon seeks to challenge the stipulation here, the *Rooker-Feldman* doctrine precludes this Court from reviewing that order in an appellate capacity. And, to the extent there are any issues in his criminal matter (King County Superior Court Case 16-1-05983-6 KNT) that constitute a final judgment, the *Rooker-Feldman* doctrine similarly precludes this Court from addressing those issues in an appellate capacity.

## CONCLUSION

Based on the foregoing, the Court **grants** the motion to dismiss of Defendants Scott Marlow and State of Washington (Dkt. 10) and **dismisses with prejudice** Plaintiff Chuck Pillon's claims against them.

DATED this 14th day of November, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION- 8